IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN O'CONNELL, | No. CIV S-06-0048 LKK KJM PS |
| Plaintiff, | |
| vs. | FINDINGS & RECOMMENDATIONS |
| UNITED STATES SMALL BUSINESS ADMINISTRATION, et al., | |
| Defendants. | |
| _____/ | |

Defendants' motion to dismiss and/or for summary judgment is pending before the court. Upon review of the documents in support and opposition as well as supplemental briefing, upon hearing the arguments of plaintiff and counsel, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

/////
/////
/////
/////
/////

1

FACTUAL BACKGROUND[1]

Plaintiff was employed as a Construction Analyst/Loss Verifier in the Loss Verification Department of the Small Business Administration's (SBA) Office of Disaster Assistance (ODA) between December 4, 1989 and January 13, 2006. His employment consisted of a series of intermittent, temporary appointments through June 29, 2003, when he commenced providing the same services with the same title under a term appointment. Plaintiff was released from that appointment at his request on January 13, 2006. He was initially employed as a GS-9, was thereafter promoted to a GS-11, was given a temporary increase to GS-12 while serving in Guam in the first half of 2003, and thereafter returned to a GS-11 pay grade for the remainder of his employment with the SBA.

The SBA provides federal disaster assistance to people and businesses located in declared disaster areas through the implementation of a disaster assistance loan program. Construction Analyst/Loss Verifiers assist ODA management by providing the information necessary to make loan-making decisions. As a Construction Analyst/Loss Verifier, plaintiff conducted field examinations and performed a variety of duties directed at verifying the cause, determining the extent and estimating the repair and/or replacement cost of damage to personal, real or business property resulting from a disaster. Throughout his employment, plaintiff was designated as a Schedule "A" employee under 5 C.F.R. § 213.3132(a). As a Schedule "A" employee, plaintiff was part of the excepted service, which is separate and distinct from the competitive service. The parties agree that at no time during his employment did plaintiff have competitive status.

On May 27, 2003, the SBA issued a vacancy announcement for a GS-828 Construction Analyst at a grade level of 5, 6 or 7. This vacancy was announced through merit

---

[1] Defendants raise various objections to plaintiff's evidence based on hearsay, speculation, lack of personal knowledge, and improper authentication. None of the evidence to which defendants object was considered by the court in making these findings and recommendations.

promotion procedures, and was limited to employees with competitive status. The vacancy remained open until June 23, 2003. Plaintiff was not eligible for the position because he did not have competitive status, and he did not submit an application for the position. The SBA ultimately selected Ron Hayes, an African-American with competitive status, to fill the position. It is undisputed that plaintiff has never filed an EEOC complaint or notified an EEO counselor of any claim of discrimination with respect to the hiring of Mr. Hayes for this position.

In February 2003, while on temporary duty with the SBA in Guam, plaintiff was accosted by an individual during his lunch hour in a restroom at the Micronesia Mall. The SBA's disaster relief offices were located at the Mall and two SBA employees witnessed a portion of the incident. Defendant Donna Gross, serving as the SBA's Officer in Charge for the disaster response effort, learned of the incident. Informed that the individual was a disaster victim who had threatened and verbally attacked plaintiff after recognizing him as a federal employee, Gross instructed the SBA's FEMA liaison to explain to plaintiff the need to report the incident to the FEMA Security Officer, in accordance with the request of FEMA, the Department of Homeland Security's National Response Plan, and the SBA's standard and routine practices for the reporting and monitoring of security and safety incidents for the protection of the agency and its employees. Plaintiff stated that the matter took place on his own time, was private, and that he did not believe a report was necessary. Plaintiff denied that the individual was a disaster victim who recognized him as a federal employee. When plaintiff failed to file the report, Gross met with him and instructed him to report the incident, indicating that a failure to do so would be considered insubordination. Plaintiff agreed to provide a report and thereafter did so.

During his employment with the SBA's ODA, plaintiff was classified as an employee exempt from the Fair Labor Standards Act (FLSA), and as a result, he was paid overtime under the Federal Employees Pay Act (FEPA), which applies to FLSA-exempt federal employees. The FLSA overtime rate is 1 ½ times an employee's actual pay level, while the FEPA overtime rate is capped at 1 ½ times the rate of a GS-10 employee. 29 U.S.C. § 207(a)(1)

3

1  (FLSA rate); 5 U.S.C. § 5542(a)(2) (FEPA rate).  In addition, during the 2004 federal budget

2  crisis, plaintiff's office of the ODA was subject to a directive issued by the ODA in Washington,

3  D.C., mandating the curtailment of overtime compensation and the compensation of overtime in

4  the form of compensatory time off or credit hours in lieu of overtime pay for employees

5  designated as the FLSA exempt.  All employees, including plaintiff, received notice of this

6  directive.  Plaintiff earned compensatory time off and credit hours during this time period,

7  submitted leave requests to use these hours as required by the ODA, and used all of these hours

8  before leaving his employment.

## ANALYSIS

A.    Defendants' Motion to Dismiss Under Rule 4(m)

Defendants move to dismiss on the ground plaintiff has not effected proper service within the time limit set forth under Federal Rule of Civil Procedure 4(m).  Plaintiff concedes he has not properly served defendants and requests dismissal without prejudice.  As explained below, defendants are entitled to dismissal and/or summary judgment on all claims except for the one made under the FLSA.[2]  Accordingly, only that claim should be dismissed without prejudice for failure to timely effect proper service.

B.    First Claim for Violation of the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 2302(b)(6)

Defendants correctly argue that this court should dismiss plaintiff's first claim for prohibited personnel practices under the CSRA because plaintiff's sole remedy for such a violation is to file a complaint with the Office of the Special Counsel; as a result, this court lacks jurisdiction to hear this claim.  Plaintiff acknowledges the lack of jurisdiction and consents to the dismissal.  Accordingly, this claim should be dismissed with prejudice as to all defendants.

---

[2] Plaintiff in opposition to the pending motion asserts that as an alternative to the FLSA claim, he has a claim under FEPA, which has not been alleged in the complaint.  Because plaintiff's FLSA claim should be dismissed without prejudice, the court need not reach the merits of a claim not yet properly pled.

4

      C.      <u>Second Claim for Violation of 42 U.S.C. § 1981/Title VII</u>

Defendants contend, and plaintiff admits, that to the extent plaintiff's second claim alleges a violation of 42 U.S.C. § 1981, it should be dismissed because Title VII provides the exclusive remedy for a federal employment discrimination action. Plaintiff consents to dismissal of this claim as to defendant Gross.

Plaintiff's Title VII claim against defendant Judd should be dismissed because plaintiff seeks lost wages and damages in connection with this claim. Title VII does not provide for general damages or for individual liability for back pay. <u>Padway v. Palches</u>, 665 F.2d 965, 968 (9th Cir. 1982); <u>Miller v. Maxwell's Int'l, Inc.</u>, 991 F.2d 583, 587 (9th Cir. 1993).

Defendants further contend that plaintiff has failed to exhaust administrative remedies with respect to any Title VII claim against defendant SBA. Defendants argue that as a result, this court lacks subject matter jurisdiction as to this claim. In considering a motion to dismiss based on lack of subject matter jurisdiction based on Federal Rule of Civil Procedure 12(b)(1), the court may consider affidavits or any other evidence properly before the court. <u>American Medical Colleges v. United States</u>, 217 F.3d 770, 778 (9th Cir. 2000).

In order to litigate a Title VII claim in federal district court, a defendant must first exhaust his administrative remedies. 42 U.S.C. § 2000e-16(c); <u>Sommatino v. United States</u>, 255 F.3d 704, 707 (9th Cir. 2001) (granting motion to dismiss Title VII claim based on Federal Rule of Civil Procedure 12(b)(1) for failure to exhaust administrative remedies). As provided by 29 C.F.R. § 1614.105(a), aggrieved persons who believe they have been discriminated against on the basis of race must consult an EEO Counselor prior to filing a complaint in order to try to informally resolve the matter. Contact with an EEO Counselor must be made within 45 days of the date of the matter alleged to have constituted discrimination or, in the case of a personnel action, within 45 days of the effective date of the action. <u>Id</u>. at § 1614.105(a)(1). This time limit may be extended "when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not

have known that the discriminatory matter or personnel action occurred, or that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits or for other reasons considered sufficient . . ." Id. at § 1614.105(a)(2). If the matter is not resolved by consultation with an EEO Counselor, an employee may file an individual complaint with the EEOC. Id. at § 1614.106.

Plaintiff has not alleged exhaustion of his administrative remedies in his verified complaint. Defendants aver that plaintiff did not notify an EEO Counselor of the discriminatory conduct alleged in his complaint nor did he file a complaint with the EEOC. Plaintiff does not dispute these facts. Plaintiff thus has failed to exhaust his administrative remedies with respect to this claim.

Plaintiff correctly notes that in Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982), the Supreme Court held the failure to timely file an EEOC administrative complaint is not a jurisdictional prerequisite to a Title VII claim, but is merely a statutory requirement subject to waiver, estoppel and equitable tolling. Based upon Zipes, plaintiff claims he is entitled to equitable relief for his failure to exhaust administrative remedies.[3] Specifically, plaintiff argues that defendants should be equitably estopped from asserting the jurisdictional pre-requisites of Title VII. Plaintiff also appears to contend that to the extent his equitable estoppel argument requires that he also establish that the time period for filing the claim has been equitably tolled, he has met his burden of establishing equitable tolling.

In Sommatino, the Ninth Circuit considered a female federal employee's Title VII claim arising from alleged sexual harassment by male co-workers. The court found that the plaintiff's verbal complaints and e-mails to an EEO Counselor were insufficient to constitute substantial compliance with the Title VII administrative claim presentment requirements because

---

[3] Although Zipes involved an action against a private employer under 42 U.S.C. §2000e-5, the Ninth Circuit has held that there are no more jurisdictional prerequisites for federal employees than for private sector employees. Ross v. United States Postal Service, 696 F.2d 720, 722 (9th Cir. 1993).

they did not notify the agency that employment discrimination was claimed. While acknowledging the holding in Zipes, that the failure to file a timely EEOC administrative complaint is not a jurisdictional pre-requisite, the Sommatino court noted that "[o]ur case law also holds that substantial compliance with the presentment of discrimination complaints to an appropriate administrative agency is a jurisdictional prerequisite." 255 F.3d at 708 (emphasis added). In addition, "[i]n cases where plaintiff has never presented a discrimination complaint . . . we have held that the district court does not have subject matter jurisdiction." Id. (emphasis added); see Blank v. Donovan, 780 F.2d 808, 809 (9th Cir. 1986); Scott v. Perry, 569 F.2d 1064, 1065-66 (9th Cir. 1978). Here, plaintiff has completely failed to file an administrative claim and, as a result, this court lacks subject matter jurisdiction.

Furthermore, while under Zipes equitable estoppel and equitable tolling can extend the deadline for filing an administrative claim, "equitable remedies are unavailable in federal court when the record shows that no administrative filing was ever made." Id. at 710 (citing Ross v. United States Postal Service, 696 F.2d 720, 722 (9th Cir. 1993); equitable considerations must first be presented to the administrative agency). Accordingly, while plaintiff's claims of equitable estoppel and equitable tolling might excuse a delay in the filing of an administrative complaint, they are not available here because plaintiff has never filed such a complaint. Plaintiff's second claim should be dismissed for failure to exhaust administrative remedies.

D.  Third Claim for Violation of Constitutional Rights

Plaintiff concedes summary judgment should be granted in favor of defendants SBA and Judd on this claim. Plaintiff alleges that his third claim is intended to allege a violation of his constitutional rights under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Defendants argue plaintiff's third claim is precluded by the CSRA and moreover, that any claim for Bivens violations is barred by the statute of limitations. The statute of limitations issue is dispositive. The applicable statute of limitations for a Bivens

action is the forum state's personal injury statute. Papa v. United States, 281 F.3d 1004, 1009 (9th Cir. 2002); Western Center for Journalism v. Cederquist, 235 F.3d 1153, 1156 (9th Cir. 2000).

There is no dispute that the actions giving rise to plaintiff's third claim occurred in the territory of Guam. As provided by Guam's personal injury statute of limitations, an action must be commenced within two years of the date the action accrued. Guam Code Ann. tit. 7, §§ 11101, 11306. A Bivens claim accrues, for limitations purposes, when plaintiff knows or has reason to know of injury. Western Center for Journalism, 235 F.3d at 1156. Plaintiff alleges that his constitutional rights were violated in February 2003. Accordingly, plaintiff knew or had reason to know of his injury in February 2003, and any complaint on this claim should have been filed in or before February 2005. Because plaintiff's complaint was not filed until January 9, 2006, plaintiff's Bivens claim is untimely, and should be dismissed.

   E. Plaintiff's Fourth and Fifth Claims Concerning Overtime Pay

Plaintiff alleges he was not paid appropriate overtime compensation. It is undisputed plaintiff received overtime pay at the FEPA rate (which, based on 5 U.S.C. § 5542(a)(2), is capped at 1 ½ times the rate of a GS-10 for employees paid at GS-10 and above) and not at the higher FLSA rate (which, under 29 U.S.C. § 207 (a)(1), is 1 ½ times an employee's actual pay level – for plaintiff, GS-11). Plaintiff claims that he is nonexempt under the FLSA and that he should have been paid at the higher FLSA rate.

Defendants contend that the FLSA overtime provisions do not apply to plaintiff because plaintiff qualifies as an administrative employee as defined by 5 C.F.R. § 551.206 and therefore is exempt from the FLSA. Section 551.206 defines an administrative employee as "an advisor or assistant to management, a representative of management, or a specialist in a management or general business function or supporting service" who meets the following criteria: (1) the primary duty test, (2) the nonmanual work test, and (3) the discretion and independent judgment test.

1   The FLSA is construed liberally in favor of employees, and exemptions are to be
2   narrowly construed against the employers seeking to assert them.  Cleveland v. City of Los
3   Angeles, 420 F.3d 981, 988 (9th Cir. 2005); 5 C.F.R.§ 551.202(b).  An employee is presumed to
4   be FLSA nonexempt, unless the employer correctly determines that the employee clearly meets
5   the exemption criteria.  5 C.F.R. § 551.202(a).  An FLSA exemption will not be found except in
6   contexts plainly and unmistakably within the given exemption's terms and spirit.  Id. at
7   § 551.202(c); Cleveland at 988.  The employer has the burden of showing that the employee
8   meets the criteria for the exemption.  Berg v. Newman 982 F.2d 500, 503 (Fed. Cir. 1992); 5
9   C.F.R.§ 551.202(c).  Determinations of exempt status may not be based solely upon position
10  descriptions or classifications, but must be based upon the day-to-day duties actually performed
11  by the employee.  Berg v. United States, 49 Fed. Cl. 459 (2001); 5 C.F.R. § 551.202(I).
12  It is undisputed that plaintiff's duties consisted primarily of performing "on-site"
13  or "field" verifications.  He also performed reverifications and participated in Preliminary Data
14  Assessments (PDA).[4]  To be FLSA exempt, these duties must fulfill all three prongs of the

---

[4] These duties may be summarized as follows:

Onsite Verifications.  In performing an on-site verification, plaintiff would visit a disaster site in a declared disaster area, interview the disaster victim, make measurements, observations, and calculations, and use these to prepare a written report with an estimate concerning the amount of money necessary to put the disaster victim in pre-disaster condition.  The report was used by the ODA's loan processing and legal departments for processing and disbursing the loan, refinancing the loan and ensuring that the SBA maintained adequate collateral.  In preparing the report the plaintiff was required to determine the cause of the damage, the ownership status of the victim, whether the property would be repaired or replaced, the extent of the damage to the property, the pre-disaster value of the property, and the estimated cost of repair or replacement.  Plaintiff was the only person on-site to evaluate the property damage.  The property was typically located in a remote area.

Reverifications.  Reverifications would occur after a borrower had requested additional funding in excess of the verified loss established by the on-site investigation and required plaintiff to re-evaluate the disaster damage by interviewing the borrower and reviewing various documents.  Plaintiff would prepare a report for use by the Legal and/or Loan Processing Departments.  His evaluations were used for loan eligibility purposes.

Preliminary Data Assessments (PDA).  Preliminary Disaster Assessments are performed immediately after the disaster and prior to any assistance being given, for the purpose of gathering information relating to the cause, severity and extent of the damage so that the appropriate declaring agency, i.e., the SBA or FEMA, can determine whether or not to declare a disaster and how to effectively meet the needs of disaster victims.  Plaintiff participated in PDA

administrative exemption.

## I. The Primary Duty Test

"Primary duty typically means the duty that constitutes the major part (over 50 percent) of an employee's work." 5 C.F.R. § 551.104. An employee satisfies the primary duty test, among other ways, if "the employee's work . . . involves . . . management or general business functions or supporting services of substantial importance to the organization serviced." 5 C.F.R. § 551.206(a). "Management or general business functions or supporting services" is distinguished from production functions, and means work of employees who provide support to line mangers by, among other things, "[p]roviding expert advice in specialized subject matter fields, such as that provided by management consultants or systems analysts; . . .[r]epresenting management in such business functions as negotiating and administering contracts, determining acceptability of goods or services or authorizing payments; or [p]roviding supporting services such as automated data processing, communications, or procurement and distribution of supplies." Id. Such work "must involve substantial discretion on matters of enough importance that the employee's actions and decisions have a noticeable impact on the effectiveness of the organization advised, represented or serviced." Id.

Defendants contend that plaintiff's "primary duty" was "to enable the SBA's Disaster Area Offices to accurately disburse and monitor disaster loans." Plaintiff disputes this characterization, but admits that over 60 percent of his job consisted of performing on-site or field verifications. Plaintiff also agrees with defendants that his findings in the field were put into reports that were used by management personnel at the SBA in making loan decisions. He further agrees that the SBA's "business" is, among other things, providing loans to disaster victims.

/////

---

by canvassing the disaster locality to count damaged structures and determine the extent of damage to those structures. Plaintiff's findings were included in a report to management.

1         Plaintiff's services are those contemplated by 5 C.F.R. § 551.206(a)(2). He
2 provided the SBA with expert advice concerning the nature and extent of the damage, the cost of
3 repair or replacement and the pre-disaster value of the property. Although plaintiff's contact
4 with disaster victims was minimal, he admits he explained to each victim the purpose of his visit
5 and the loan program and that he was the only person on-site to evaluate the damage. He does
6 not dispute that at times he was the first and only federal employee with whom the disaster
7 victim would have contact. As such, he was the SBA's representative in the field. Under these
8 circumstances, plaintiff meets the primary duty test.

                ii.  <u>The Nonmanual Work Test</u>.

10         An employee satisfies the nonmanual work test if he "performs office or other
11 predominantly nonmanual work which is . . . (1) intellectual and varied in nature; or (2) of a
12 specialized or technical nature that requires special training, experience and knowledge."
13 5 C.F.R. § 551.206(b). Employees performing nonmanual work would be "white-collar"
14 employees, as opposed to employees spending most of the time "using tools, instruments,
15 machinery, or other equipment or . . . performing repetitive operations with their hands . . ."
16 <u>Berg v. United States</u>, 49 Fed. Cl. 459, 474 (2001). The performance of a limited amount of
17 manual work that is directly related to the employee's work would not disqualify that employee
18 as a "white collar" worker, and field work related to an employee's special skills is considered
19 nonmanual work. <u>Bates v. United States</u>, 60 Fed. Cl. 319, 323, 335-336 (2004).
20 /////
21 /////
22 /////
23 /////
24 /////
25 /////
26 /////

"Work of an intellectual nature" is:

> . . . work requiring general intellectual abilities, such as perceptiveness, analytical reasoning, perspective, and judgment applied to a variety of subject matter fields, or work requiring mental processes which involve substantial judgment based on considering, selecting, adapting, and applying principles to numerous variables. The employee cannot rely on standardized application of established procedures or precedents, but must recognize and evaluate the effect of a continual variety of conditions or requirements in selecting, adapting, or innovating techniques and procedures, interpreting findings, and selecting and recommending the best alternative from among a broad range of possible actions.

5 C.F.R. § 551.104.

"Work of a specialized or technical nature" is:

> . . . work which requires substantial specialized knowledge of a complex subject matter and of the principles, techniques, practices, and procedures associated with that subject matter field. This knowledge characteristically is acquired through considerable on-the-job training and experience in the specialized subject matter field, as distinguished from professional knowledge characteristically acquired through specialized academic education.

Id.

In this case, plaintiff applied his knowledge, skills and abilities to a variety of residential and business structures. He acquired extensive knowledge through on-the-job training and experience. He used pricing guidelines, which provided him with a range of replacement costs for different types of property. He evaluated architectural and engineering reports for size and quantity purposes and for code-mandated upgrades. These duties are both intellectual and varied in nature and of a specialized or technical nature that requires special training, experience and knowledge. Plaintiff therefore meets the nonmanual work test.

/////

/////

/////

/////

### iii. The Discretion and Independent Judgment Test

Title 5 C.F.R. § 551.104 defines "discretion and independent judgment" as follows:

> Discretion and independent judgment means work that involves comparing and evaluating possible courses of conduct, interpreting results or implications, and independently taking action or making a decision after considering the various possibilities. However, firm commitments or final decisions are not necessary to support exemption. The "decisions" made as a result of the exercise of independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decisions are subject to review, and that on occasion the decisions are revised or reversed after review, does not mean that the employee is not exercising discretion and independent judgment of the level required for exemption. Work reflective of discretion and independent judgment must meet the three following criteria:
>
> (1) The work must be sufficiently complex and varied so as to customarily and regularly require discretion and independent judgment in determining the approaches and techniques to be used, and in evaluating results. This precludes exempting an employee who performs work primarily requiring skill in applying standardized techniques or knowledge of established procedures, precedents, or other guidelines which specifically govern the employee's action.
>
> (2) The employee must have the authority to make such determinations during the course of assignments. This precludes exempting trainees who are in a line of work which requires discretion but who have not been given authority to decide discretionary matters independently.
>
> (3) The decisions made independently must be significant. The term "significant" is not so restrictive as to include only the kinds of decisions made by employees who formulate policies or exercise broad commitment authority. However, the term does not extend to the kinds of decisions that affect only the procedural details of the employee's own work, or to such matters as deciding whether a situation does or does not conform to clearly applicable criteria.

/////

/////

The discretion and independent judgment test is satisfied "if the employee has the ability to compare, evaluate, and choose from possible courses of conduct." Bothell v. Phase Metrics, 299 F.3d 1120, 1129 (9th Cir. 2002). The requirement "implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." Id. (quoting 29 C.F.R. § 541.207(a)).

Defendants contend plaintiff meets this test because plaintiff's duties were analogous to that of a claims adjuster. As provided by DOL regulations, which interpret the same FLSA provisions with respect to private-sector employees, claims adjusters that perform certain functions are exempt from the FLSA. 29 C.F.R. § 541.203(a).[5] These activities include: "interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation." Id. Defendants contend, and plaintiff generally concedes, that he performed some analogous tasks in the lending context.

Plaintiff, however, did not negotiate with disaster victims nor make recommendations regarding litigation. Plaintiff also contends that, unlike insurance adjusters, he had minimal contact with disaster victims and his reports were not very detailed. Moreover, plaintiff asserts his tasks entailed applying the SBA's standardized techniques and knowing the SBA's established procedures, precedents and other guidelines, and that these guidelines specifically governed his actions. Plaintiff was only allowed to deviate from SBA guidelines when they did not provide pricing examples. Such deviation occurred less than five percent of the time and almost entirely with respect to valuation of business personal property. A reasonable inference may be drawn that plaintiff's decisions affected only the procedural details

---

[5] The DOL regulations, while not directly applicable, can be used in connection with a federal employee's claim to interpret the requirement under the FLSA. Grandits v. United States, 66 Fed. Cl. 519, 531 n.10 (2005).

14

of his work and were concerned solely with whether a situation did or did not conform to clearly applicable criteria established by the SBA.  Under these circumstances, plaintiff has raised a triable issue as to whether he meets the discretion and independent judgment test.  See <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  Defendants therefore are not entitled to summary judgment on plaintiff's FLSA claim.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss and/or for summary judgment be granted except for plaintiff's claim under the FLSA.

2. The FLSA claim be dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 27, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

oconnell.57